IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   04-cv-02555-WYD-PAC

MARK H. WHITE,

      Plaintiff(s),

v.

DIRK KEMPTHORNE,[1] Secretary, U.S. Department of the Interior,

      Defendant(s).

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Patricia A. Coan, United States Magistrate Judge

      This is a *pro se* action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*, and as amended by the 1991 Civil Rights Act, 42 U.S.C. §1981a.  Plaintiff asserts claims of race discrimination, hostile work environment, and unlawful retaliation for filing administrative complaints of discrimination.  A December 17, 2004 Order of Reference referred this case to me to conduct pretrial proceedings and to make recommended rulings on dispositive motions.  The matter before the court is Defendant's Motion for Summary Judgment . . . [Doc. #13] [filed October 27, 2005].  The motion is fully briefed[2] and I have determined that oral argument would not be of material assistance.

---

      [1]Dick Kempthorne has succeeded Gail Norton as Secretary of the Department of the Interior. Secretary Kempthorne is substituted for Ms. Norton pursuant to Fed.R.Civ.P. 25(d).

      [2]On April 25, 2006, I granted plaintiff's request, under Fed.R.Civ.P. 56(f), to defer my recommendation on the motion for summary judgment so that plaintiff could depose two individuals and supplement his response brief with those witnesses' testimony.  Plaintiff's supplemental response was received by the court on July 5, 2006, but was mistakenly not filed and docketed until July 12, 2006 (Doc.#38).  Defendant filed a Reply on July 12, 2006 (Doc. #37).

I.

Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When applying this standard, the court reviews the pleadings and documentary evidence in the light most favorable to the non moving party. *Gray v. Phillips Petroleum*, 858 F.2d 610, 613 (10th Cir. 1988). To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Speculation, supposition and unsupported factual allegations will not establish an issue of material fact necessitating trial. *Handy v. Price,* 996 F.2d 1064, 1068 (10th Cir. 1993).

II.

The following facts are undisputed or are construed in plaintiff's favor on summary judgment. During the relevant period, plaintiff, an African-American male, was employed as a senior accountant with the Office of Surface Mining ("OSM"), United States Department of the Interior ("DOI"), in Lakewood, Colorado. (Compl., at 3) Carol Sampson, a Caucasian female, was plaintiff's second level supervisor. (Affidavit of Carol Sampson, Motion for Summary Judgment ("MSJ") Ex. A7, at p. 3) JoAnn Hagan, a Caucasian female, was plaintiff's immediate supervisor before she retired in June 2002. (Affidavit of JoAnn Hagan, MSJ Ex. A8, at pp. 2-3)

On March 6, 2002, OSM advertised a vacancy for the position of Chief of the Division of Financial Management. (MSJ Ex. A3)  Plaintiff applied by the April 5, 2002 closing date.  (MSJ, Ex. A2; Plaintiff's Reply Brief, Response to Statement of Undisputed Material Fact No. 4)  The Human Resources office rated sixteen of the eighteen candidates, including the plaintiff, as qualified and forwarded those applications to a three-person rating panel to determine the applicants' relative qualifications. (Deposition of Mark H. White, at 33; MSJ Ex. A2, at 7, *admitted*, Plaintiff's Response to Statement of Undisputed Material Fact No. 6; Wohlgemuth Affidavit, at 7)

Karen Baker, an African-American female, Sky Lesher, a Caucasian male, and Pam Haze,[3] were the three panel members who reviewed the applications for the position of Financial Management Division Chief.  (Affidavit of Karen Baker, MSJ Ex. A4, at pp. 4-5; Affidavit of Sky Lesher, MSJ Ex. A5, at 4; Affidavit of Jim Wohlgemuth, MSJ Ex. A6, at p. 4) Each panel member evaluated the candidates' responses to thirty-seven task questions using a scoring sheet.  (*Id.*)  Jim Wohlgemuth, a supervisory human resources specialist, reviewed the panel members' scores to determine whether the scores were consistent as to each applicant.  (*Id.*)  All three panel members rated plaintiff below the cut-off score of 342.  (*Id.* at p. 8; MSJ Ex. A14)  Plaintiff was not one of the nine applicants whom Wohlgemuth entered on the Certificate of Eligible Job Candidates submitted to Carol Sampson, the selecting official. (Wohlgemuth Affidavit, at p. 8; Sampson Affidavit, at p.4) Wohlgemuth sent the certificate of eligibles to the EEO office to review for diversity of candidates before he forwarded the list to Sampson.  (*Id.* at 8) Wohlgemuth did not receive

---

[3]Ms. Haze's race is not part of the summary judgment record.

any comments about plaintiff during the application and selection process.  (Wohlgemuth Affidavit, at 8)

Panel member Baker does not recall specifically how she rated plaintiff, but her general recollection was that plaintiff did not have the same degree of experience as some of the other candidates.  (Baker Affidavit, MSJ Ex. A4 at p. 5) Baker did not discuss plaintiff's application with Sampson or Human Resources staff members.  (*Id.*)  Baker knows plaintiff because she attended a meeting with him in 1996 or 1997, but Baker does not work with plaintiff.  (*Id.* at p.3)

Lesher does not know plaintiff and doesn't remember whether plaintiff was one of the applicants for the Division Chief position.  (Lesher Affidavit, at p. 4) Lesher did not discuss plaintiff with Sampson or with Human Resources.  (*Id.* at pp. 4-5)

Sampson selected Esther Horst as the best qualified candidate for the position. (White Deposition, at 12) Horst scored an average total of 360 points on the task questions, 38 points higher than plaintiff's average total score of 322. (MSJ, Ex. A14) The other eight candidates listed on the certificate of eligibles scored an average total of 342 points or higher on the task questions.  (*Id.*)

Sampson did not speak to any of the panel members about plaintiff, or any of the other applicants, during the panel's review process.  (*Id.* at p. 5) Sampson did not supervise any of the panel members.  (Sampson Affidavit, at p.4)

JoAnn Hagan, plaintiff's immediate supervisor, gave plaintiff an "overall" performance rating in late May 2002.  (*Id.* at p. 5) Hagan rated plaintiff on four critical elements.  (MSJ Ex. A8,. at p. 6) Hagan rated plaintiff as "not achieved" for one element

– "Coordinates the Division Planning Function." (*Id.* at pp. 6-7; MSJ Ex. A9) Hagan

delivered the performance rating to plaintiff's office on May 28, 2002. (Hagan Affidavit, at

p.7)

Plaintiff filed his complaint of discrimination with the DOI on October 28, 2002.

(Compl., Attachment 1)  The DOI issued a Final Agency Decision on February 20, 2004.

(Defendant's MSJ, Ex. A11)  Plaintiff then appealed to the Equal Employment Opportunity

Commission ("EEOC").  (Defendant's Statement of Undisputed Fact No. 25, *admitted* in

plaintiff's Reply) The EEOC issued a final decision, and advised plaintiff of his right to file

a civil suit, on September 7, 2004.  (Compl., Attachment 2)  Plaintiff thereafter filed the

instant action on December 13, 2004.

Plaintiff claims that: (1) he was discriminated against on the basis of his race,

African-American, when he was not listed on the Certificate of Eligible Candidates for the

position of Chief of the Division of Financial Management of OSM and when he received

a discriminatory final performance appraisal for the rating year ending June 30,2002;[4] (2)

he has been subjected to a hostile work environment at OSM; and (3) that his supervisors

retaliated against him because he filed prior complaints of discrimination with the agency.

III.

A.   Jurisdiction

I first address*, sua sponte*, the jurisdictional issue of whether plaintiff exhausted

administrative remedies for his claim that he received a discriminatory final performance

---

[4]Plaintiff also asserted race discrimination based on his supervisor's failure to give him performance standards for the Fiscal Year 2003.  However, plaintiff has abandoned that claim. (Defendant's Statement of Undisputed Material Fact No. 21, *admitted* in Plaintiff's Reply, Response to Defendant's Statement of Undisputed Material Fact No. 21)

appraisal for the rating year ending June 30, 2002.

A federal employee must present his discrimination claim to the EEOC before bringing suit in federal court.  42 U.S.C. §2000e-16(c); *Khader v. Aspin*, 1 F.3d 968, 970 (10th Cir.1993)(holding that exhustion of administrative remedies is a jurisdictional prerequisite to filing Title VII claims in federal court); *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir.2005)(recognizing that, in the Tenth Circuit, administrative exhaustion is jurisdictional prerequisite for discrimination claims).[5]

Defendant's evidence shows that plaintiff's immediate supervisor, JoAnn Hagan, gave plaintiff an "overall" performance rating in late May 2002 because she was scheduled to retire on June 3, 2002.   (Hagan Affidavit)  Hagan rated plaintiff as "not achieved" for one of the four rating elements.  (*Id.*; MSJ Ex. A9)  Hagan avers that the May 2002 performance appraisal was a "final" rating for the rating year which ended on June 30, 2002 because she was retiring before that date, and that her memorandum to plaintiff accompanying the appraisal described the rating as an "overall" rating.  (Hagan Affidavit, at p.5) Hagan states that agency regulations authorize a supervisor to give employees a final rating before the end of the rating period.  (*Id.* at p. 6)

Plaintiff asserted in his EEOC charge that he did not receive a final performance appraisal for the rating year ending June 30, 2002, but he did not claim that the performance appraisal he received from Hagan in late May 2002 was discriminatory or retaliatory. (*See* administrative charges and EEOC Decision, attached to Compl; Final

---

[5]The court may raise the issue of subject matter jurisdiction sua sponte at any time during the course of the proceedings. See *McAlester v. United Airlines, Inc.,* 851 F.2d 1249, 1252 (10th Cir.1988).

Agency Decision of Department of Interior, MSJ Ex. A11, at 10 (noting that plaintiff's charge of discrimination did not challenge the performance appraisal that plaintiff received in May 2002))

A Title VII plaintiff is required to exhaust administrative remedies for each discrete incident of discriminatory or unlawful treatment before seeking judicial relief. *See Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)(citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110-113 (2002))(holding that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges"). Because plaintiff did not exhaust administrative remedies for his race discrimination and retaliation claims which are premised on the alleged discriminatory May 2002 performance rating, those claims should be dismissed for lack of subject matter jurisdiction.

In contrast, I may consider the alleged discriminatory performance appraisal as part of plaintiff's racially hostile work environment claim. *See Morgan*, 536 U.S. at 115, 120 n.12 (recognizing that hostile work environment claims are different than disparate treatment and retaliation claims because liability for a hostile work environment "[is] based on the cumulative effect of individual acts" and depends upon proof of repeated conduct extending over a period of time)

B.   Timeliness of Title VII Action

Defendant first argues that plaintiff's action is untimely because he filed it more than ninety days after he received the EEOC's final decision and notice of right to sue.

A federal employee must initiate a Title VII action within ninety days after receiving

a final decision from the EEOC.  42 U.S.C. §2000e-16(c).  The ninety-day filing requirement is a condition precedent to suit, but is not jurisdictional.  *Conkle v. Potter*, 352 F.3d 1333, 1336 n.5 (10th Cir. 2003)(internal citation and quotation omitted).

The EEOC mailed its final decision to plaintiff on September 7, 2004.  Plaintiff does not recall when he received the decision in the mail and has not submitted the postmarked envelope to the court to prove the date.  The Tenth Circuit has "implicitly sanctioned applying either a five-day or three-day [mailing time] presumption" when the receipt date for an EEOC right-to-sue letter is unknown or disputed.  *Lozano v. Ashcroft*, 258 F.3d 1160, 1165 (10th Cir. 2001).  The EEOC presumes a five-day mailing period.  *See* Decision, attached to Compl., at p. 3.  Assuming that plaintiff received the EEOC's decision and notice of right to sue on September 12, 2004, five days after it was mailed, he was required to file his Title VII action on or before December 11, 2004.  Because December 11, 2004 was a Saturday, the Title VII Complaint was due on December 13, 2004, the date it was filed by plaintiff.  *See* Fed.R.Civ.P. 6(a)(providing that if a court filing deadline falls on the weekend, the filing is due the following Monday).  Accordingly, I recommend finding that this action was timely filed under 42 U.S.C. §2000e-16(c).

C.    Merits of Plaintiff's Claims

Title VII prohibits discrimination in federal employment on the basis of race, color, religion, sex, or national origin.  42 U.S.C. §2000e-16(a). The statute also makes it unlawful for federal employers to retaliate against an employee because the employee engaged in protected activity.  42 U.S.C. §2000e-3; *see*, *also, Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004)(applying §2000e-3 in context of federal employment)

1.    Race discrimination

Plaintiff first claims that defendant discriminated against him on the basis of his race when defendant did not refer plaintiff to the selecting official for consideration for the position of Chief of the Division of Financial Management.

An employee may support his claim with direct evidence of racial animus, or with indirect or circumstantial evidence of race discrimination.  *Kendrick v. Penske Trans. Services, Inc.*, 220 F.3d 1220, 1234 (10th Cir. 2000).  Because plaintiff has not presented any direct evidence of racial animus, I apply the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) for analyzing Title VII claims.  Under *McDonnell Douglas Corp.*, the plaintiff must first establish a prima facie case of race discrimination.  If plaintiff meets his burden, the employer must produce a legitimate, non-discriminatory justification for the challenged employment action.  If the employer satisfies its burden of production, the plaintiff must point to evidence showing that the employer's proffered reason was a pretext for discrimination.  *Stover*, 382 F.3d at 1070-71.

To establish a prima facie case of employment discrimination under Title VII, an employee is required to show that: "(1) he is a member of a protected class; (2) he applied for and was qualified for the particular position; (3) he was not [hired or] promoted despite his qualifications; and (4) the position was filled or remained open after he was rejected." *Cross v. The Home Depot*, 390 F.3d 1283, 1287 (10th Cir. 2004).

Plaintiff, an African-American, is a member of a protected class.  Plaintiff applied for the position of Chief of the Division of Financial Management and was deemed

qualified for that position by the Human Resources office, as evidenced by Supervisory Human Resources Specialist Wohlgemuth's averment that plaintiff's name was one of sixteen qualified applicants whose applications were submitted to the rating panel. Another individual, Esther Horst, was chosen to fill the position. Because plaintiff has met each element, I recommend finding that plaintiff has established a prima facie case of discrimination. Accordingly, I next consider whether the defendant has proffered a legitimate, non discriminatory reason for its decisions not to refer plaintiff to the selecting official and to promote someone other than the plaintiff to the Division Chief position.

Wohlgemuth stated in his affidavit that each panel member sent him scores for each applicant on the thirty-seven task questions. (*See, generally,* MSJ Ex. A6) Wohlgemuth reviewed the panel members' scores for consistency. (*Id.*) If there was a variation on the scoring for a particular applicant, Wohlgemuth contacted the panel member(s) to discuss how the score was reached. (*Id.*) Wohlgemuth did not make any further inquiries if the panel members' scores for a particular applicant were close. (*Id.*) According to Wohlgemuth, the panel members' scores for plaintiff were consistent. (*Id.*) Wohlgemuth did not enter plaintiff's name as one of the nine applicants on the Certificate for Eligibility given to the selecting official, Carol Sampson, because plaintiff's scores did not meet the cut-off. (*Id.*) Esther Horst, the individual who was chosen for the position of Division Chief, received a total average score of 360 points on the task questions from the three panel members, while plaintiff received a total average score of 322 points. (MSJ Ex. A14) The other eight candidates referred to the selecting official received an average score at least twenty points higher than plaintiff on the task questions. (*Id.*)

I recommend finding that defendant has offered a legitimate, non discriminatory justification for its decisions not to refer plaintiff's name to the selecting official and to promote someone other than plaintiff to the Division Chief position.  Accordingly, to survive defendant's summary judgment motion, plaintiff must point to evidence from which the jury could reasonably infer that the defendant's asserted justification is pretextual.

An employee may demonstrate pretext by showing that the employer's asserted justification was "so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief."  *Stover*, 382 F.3d at 1071 (citation omitted).

Plaintiff asserts that the rating panel "did not operate from a required crediting plan," contrary to the OSM Merit Promotion Plan which directs that a Crediting Plan be used to evaluate candidates using the same criteria.  (Plaintiff's Reply Brief, at pp. 2, 4) Plaintiff also argues that material factual issues remain about "who formed the panel and the complete objectives of the panel." (*Id.*, at 2)

I recommend finding that plaintiff has failed to create a genuine issue of material fact about whether defendant's proffered reasons for not referring plaintiff's name to the selecting official and for not promoting plaintiff to the Division Chief position were pretextual.  While plaintiff asserts that the rating panel did not operate from a required crediting plan, Wohlgemuth states in his affidavit that OSM has used an OPM[6]-approved "quick hire" process, which does not include a crediting plan, for the three years before plaintiff applied for the position.  (MSJ, Ex. A6)  Under that process, Human Resources develops task questions from the position description.   *Id.*  The task questions are

---

[6]Office of Personnel Management.

included in the vacancy announcement. *Id.* The applicants rate themselves on each task question and the panel members either concur or modify each applicant's self ratings. *Id.* The task questions developed for the Division Chief position were submitted to the EEO office to ensure EEO compliance so that none of the questions would block consideration of a minority candidate. (*Id.* at 5)

Wohlgemuth further stated that for past vacancies under the "quick hire" process, the human resources specialist would rate the candidates and list those most qualified on the certificate of eligibles; however, for the Division Chief vacancy, human resources formed a rating panel at the suggestion of the EEO office and Sampson recommended the names of four or five individuals to serve on the hiring panel. (*Id.* at 4-5)

Plaintiff has not proffered any evidence to show that the employer's applicant rating process was such that a reasonable fact-finder could rationally conclude that the employer's decision to hire someone other than plaintiff for the Division Chief position is unworthy of credence. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Although defendant has not fully explained the rationale for a rating panel in the selection process for the Division Chief position, the record does not reflect that the use of a rating panel was illogical or defective in any way and no other evidence was presented to demonstrate that the employer's asserted justification for the decision is unworthy of belief. Plaintiff asserts that material factual issues remain about who formed the rating panel and the objectives of the panel which are critical to the ultimate issue of whether management officials manipulated the hiring process. However, plaintiff does not point to any evidence to refute Wohlgemuth's statements that the rating panel was formed

12

pursuant to an EEO office directive and that Sampson recommended the names of individuals who could serve on the panel.[7] Plaintiff represents in his supplemental response that panel member Haze testified in her deposition that she does not have any educational background or work experience in accounting.[8]   Plaintiff argues that Sampson's choice of Haze, an individual without an accounting background, to be on the rating panel, shows that Sampson manipulated the hiring process to ensure that plaintiff's name was not on the list of candidates referred to her for final selection.   Even if plaintiff had produced the relevant portion of Haze's deposition transcript, I recommend finding that, even if it is true, that fact alone is insufficient to create a material factual issue about whether Sampson manipulated the hiring process. Accordingly, plaintiff has failed to provide enough evidence to create a material factual dispute about pretext.

Moreover, plaintiff's opinion that he was the best qualified candidate for the position is not enough to create a material factual dispute about whether plaintiff should have been selected.   *See Exum v. United States Olympic Committee*, 389 F.3d 1130, 1138 (10th Cir. 2004)(holding that plaintiff's opinion about his leadership and managerial skills was insufficient to show a genuine factual dispute on the issue of pretext).   Defendant used the same criteria to rank the qualified candidates.   Each of the nine candidates Wohlgemuth listed on the certificate of eligibles scored at least twenty points higher than the plaintiff on the task questions.

---

[7]Indeed, according to plaintiff, Sampson testified in her deposition that she chose the individuals who served on the rating panel.   *See* Plaintiff's Supplement to his Responses to Defendant's Motion for Summary Judgment (Doc. #38)

[8]Plaintiff does not attached the relevant portion of the deposition transcript to his supplemental response, as required by Fed.R.Civ.P. 56(e).

Finally, plaintiff conceded in his deposition that he did not have any information to suggest that any of the rating panel members were biased against him because of his race. (Deposition of Mark White, at 35)

Accordingly, because plaintiff has failed to proffer any evidence to show that the employer's asserted justification for the hiring decision was pretextual, I recommend that defendant's motion for summary judgment be granted on plaintiff's Title VII race discrimination claim.

2.   Retaliation

Plaintiff next claims that defendant retaliated against him for filing internal complaints of discrimination with the agency.

An employee may prove unlawful retaliation with direct evidence or by establishing a prima facie case under the *McDonnell Douglas* framework.  *Stover*, 382 F.3d at 1070. A prima facie case of retaliation has three elements: "(1) the plaintiff engaged in protected opposition or participated in a Title VII proceeding; (2) the employer acted adversely subsequent to or contemporaneous with employee activity; and (3) there is causal connection between plaintiff's activity and the employer's action." *Mattioda v. White*, 323 F.3d 1288, 1293 (10th Cir.2003).  In addition, the employee must show that the person who took the adverse action against him knew about the employee's protected activity. *Peterson v. Utah Dep't of Corrections*, 301 F.3d 1182, 1188-89 (10th Cir. 2002)(citing Tenth Circuit cases).

I recommend finding that plaintiff has submitted evidence from which a jury could find that plaintiff has satisfied the first two elements of his prima facie case of retaliation.

The record shows that plaintiff filed at least two complaints of discrimination with the agency ("EEO complaints") before he applied for the vacant Division Chief position in March/April 2002. (*See* Complaints of Discrimination, attached as Exs. 5, 6)   Plaintiff's EEO complaints are protected activity.  *Stover*, 382 F.3d at 1071.   Supervisory Human Resources Specialist Wohlgemuth did not list plaintiff as one of the nine candidates on the certificate of eligibles referred to the selecting official for consideration for the Division Chief position after plaintiff filed EEO complaints.   Ms. Sampson, the selecting official, knew about plaintiff's prior EEO activity, as did Mr. Wohlgemuth.  (Sampson Affidavit, MSJ Ex. A7, at p. 4; White Deposition, at 36) The record reflects that only one member of the ranking panel, Karen Baker, knew about plaintiff's prior EEO activity. (Baker Affidavit, MSJ Ex. A4, at 4)

Under the causation element, close temporal proximity between the employee's protected activity and the employment action may establish the requisite causal connection to justify an inference of retaliatory motive.  *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir. 1999); *see, also, Annett v. University of Kansas*, 371 F.3d 1233, 1240-41 (10th Cir. 2004)(concluding that a period of two to three months between the protected activity and the alleged retaliatory action was close enough to establish a prima facie case of causation); *Anderson Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)(assuming that temporal proximity of two months and one week between protected activity and adverse action was sufficient to support a prima facie case of retaliation); *but see Meiners v. Univ. of Kan.,* 359 F.3d 1222, 1231 (10th Cir.2004)(a minimum of two months and one week and a maximum of just under three months between the protected

conduct and the adverse action is "probably too far apart ... to establish causation by temporal proximity alone.").

The record shows that the Certificate of Eligible Candidates for the Division Chief vacancy was submitted to the selecting official on approximately June 10, 2002.  (White Deposition, at 28; MSJ Ex. A11, at p. 5)  Plaintiff filed an EEO complaint on March 11, 2002 (Plaintiff's Reply, Ex. 6), three months before the adverse employment action.  I recommend finding that a three-month time period between the protected activity and the adverse employment action may be enough to infer a causal connection.

Assuming that plaintiff has established a prima facie case of retaliation, I recommend finding that defendant has offered a legitimate, non discriminatory justification for its decision not to refer plaintiff's name to the selecting official for promotion to the Division Chief position.  As discussed in Section III.C.1., *supra*, plaintiff's total average score on the task questions was at least twenty points lower than the average score of the nine candidates referred to the selecting official; and plaintiff's score was thirty-eight points lower than the individual chosen for the position of Division Chief.   Accordingly, plaintiff must point to evidence from which the jury could reasonably infer that the defendant's asserted justification is a pretext for unlawful retaliation.

Although close temporal proximity between the protected conduct and the adverse employment action is a factor in showing pretext, it is not sufficient by itself to defeat a motion for summary judgment. *Medina v. Income Support Division, New Mexico*, 413 F.3d 1131, 1137-38 (10th Cir. 2005)(citing *Annett*, 371 F.3d at 1240)(quotations omitted) Instead, plaintiff must show that the employer's asserted reason for its action is unworthy

of credence. *Medina*, 413 F.3d at 1138 (citing *Anderson*, 181 F.3d at 1179)(quotations omitted).

Plaintiff does not believe that any of the rating panel members had a motive to retaliate against him for his prior EEO activity[9] – rather, plaintiff asserts that the panel members were "do[ing] . . . the bidding" of Wohlgemuth or Sampson. (White Deposition, at 37)   Plaintiff maintains that Sampson chose the individuals who served on the rating panel so that she could exclude plaintiff from the final list of candidates, and that Wohlgemuth "would have communicated to the panel members what he wanted" – i.e. that plaintiff not be ranked as highly as other candidates. (*Id.* at 36)  Plaintiff has not proffered any evidence to support his assertion that either Sampson or Wohlgemuth manipulated the hiring process so that plaintiff was prevented from being listed as one of the candidates on the certificate of eligibles for the Division Chief position. Speculation and conjecture does not establish an issue of material fact necessitating trial. *Handy,* 996 F.2d at 1068.

I recommend dismissal of plaintiff's retaliation claim because plaintiff has failed to establish a material factual dispute about whether the employer's decision not to list plaintiff as one of the nine finalists for the Division Chief position was a pretext for retaliation against plaintiff because he had filed EEO complaints.

3.   Hostile work environment

Plaintiff finally claims that he has been subjected to a racially hostile work

---

[9]Indeed, the evidence reflects that two of the panel members did not have a working relationship with the plaintiff.   (Baker Affidavit, MSJ Ex. A4, at 3; Lesher Affidavit, Ex. A5, at 4) The record is devoid of any evidence about the third panel member's (Pamela Haze) working relationship with plaintiff.

environment.

Discriminatory conduct "that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" is unlawful under Title VII. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To survive summary judgment on his racially hostile work environment claim, plaintiff must proffer evidence "`that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment and (2) the harassment was racial or stemmed from racial animus.'" *Chavez v. New Mexico*, 397 F.3d 826, 831-32 (10th Cir. 2005)(quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir.1994)). Plaintiff must point to "more than a few isolated incidents of racial enmity" to establish his claim. *Bolden*, 43 F.3d at 551.

Plaintiff offers the following evidence in support of his racially hostile work environment claim: (1) plaintiff was suspended without pay for forty-four hours on June 4, 2001; (2) plaintiff was not given the opportunity to be the Acting Division Chief when the Division Chief was absent, at some time prior to November 2001; (3) plaintiff was placed in an AWOL status, denied official time for preparing his response in support of an EEO complaint, and harassed by his supervisor in December 2001; (4) plaintiff was not selected for the Division Chief position vacancy posted in March 2002; (5) plaintiff received a substandard performance appraisal in June 2002; (6) plaintiff was the only African-American GS-14 who was assigned work space in a cubicle, instead of an office, in August 2003; (7) plaintiff was not given the opportunity to be the Acting Division Chief in November 2003 when the Division Chief was out of town, even though plaintiff is the senior

non-management employee; and (8) plaintiff was not given the same opportunity as others to apply for the vacant position of Supervisory Financial Manager in 2004.[10]   (Complaint; Plaintiff's Reply Brief, Exs. 5-10)

Here, plaintiff has not offered any admissible evidence to show that his workplace was "permeated with discriminatory intimidates, ridicule, and insult," *Davis v. U.S. Postal Service*, 142 F.3d 1334, 1341 (10th Cir. 1998).   Moreover, there is no evidence in the record which would support a reasonable inference that the eight acts about which plaintiff complains occurred because of plaintiff's race.

Plaintiff relies on an unsworn "affidavit" from David Reff, an employee plaintiff supervised, which was obtained by an EEO Investigator in August 2002.   Reff states that JoAnn Hagan and another manager, Robert Ewing, asked Reff and other employees in 1999 if they had any complaints about plaintiff.   (Plaintiff's Reply, Ex. 12)   Reff further states that, to his knowledge, Hagan and Ewing did not solicit the same information about Caucasian supervisors "who have interacted in manners identical to that of Mr. White" and that Reff's "perception is that there was a personal bias against Mr. White on the part of JoAnn Hagan and Robert Ewing." (*Id.*)

Under Fed.R.Civ.P. 56(e) affidavits opposing a summary judgment motion must be made "on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters

---

[10]Plaintiff filed EEO charges with respect to each of the above incidents, with the exception of plaintiff's allegation that he was given a discriminatory substandard performance appraisal in June 2002. However, as long as one act contributing to a hostile work environment claim occurred within the statutory period for filing an EEOC charge, the court may consider all acts contributing to the hostile work environment which "are part of the same actionable hostile work environment practice" for purposes of determining liability. *Morgan*, 536 U.S. at 117, 120.

stated therein." Unsworn statements do not satisfy the requirements of Rule 56(e). *See Hayes v. Marriott*, 70 F.3d 1144, 1148 (1995); *Small v. Lehman*, 98 F.3d 762, 764 n. 5 (3d Cir.1996)*, overruled on other grounds by City of Boerne v. Flores*, 521 U.S. 507 (1997); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir.1988); *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir.1985). As discussed previously, *pro se* litigants must follow the rules of civil procedure the same as other litigants. *See Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir.1994). Notwithstanding, the court may allow a *pro se* litigant an opportunity to remedy defects in his materials in opposition to a summary judgment motion. *See* Fed.R.Civ.P. 56(e)("The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits."); s*ee, also, Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir.1985)(holding that the district court abused its discretion in failing to give plaintiff meaningful opportunity to remedy obvious defects in his summary judgment materials in employment discrimination action).

Here, I need not give plaintiff an opportunity to resubmit Reff's "affidavit" as a sworn statement because a conforming affidavit would not allow plaintiff to avoid summary judgment on his racially hostile work environment claim. Reff states that managerial employees asked him in 1999 whether he had any complaints about plaintiff, but did not ask the same question about other Caucasian managers. Reff's testimony describes a single incident that may raise a question about racial animus in plaintiff's work environment in 1999. Plaintiff does not describe any other incidents of racial enmity at work until August 2003 when he was the only African-American GS-14 who was assigned work space in a cubicle, instead of an office. I recommend finding that two isolated events of racial

enmity which occurred approximately four years apart could not lead a reasonable fact-finder to conclude that plaintiff was subjected to a pervasive racially hostile work environment. *See Jones v. Barnhart*, 349 F.3d 1260, 1269 (10th Cir. 2003)(concluding that three incidents of possible racial animus were insufficient to survive defendants' motion for summary judgment on plaintiff's racially hostile work environment claim).

Accordingly, I recommend that summary judgment be granted in favor of defendant on plaintiff's racially hostile work environment claim.

IV.

For the reasons set forth above, it is

**RECOMMENDED** that Defendant's Motion for Summary Judgment . . . [Doc. #13] [filed October 27, 2005] be **GRANTED** as follows: Plaintiff's race discrimination and retaliation claims which are premised on the alleged discriminatory May 2002 performance rating should be **DISMISSED** for lack of subject matter jurisdiction because plaintiff failed to exhaust his administrative remedies.  Plaintiff's remaining claims should be **DISMISSED** on their merits.  It is

**FURTHER RECOMMENDED** that this action be **DISMISSED WITH PREJUDICE**.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado.  The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in**

part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.

Dated July 17, 2006.

BY THE COURT:

s/ Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge